## The People of the State of Illinois, ex rel., Appellee, v. Roswell Bibb, Appellant.

1. BASTARDY—*when verdict not disturbed.* A verdict in bastardy will not be disturbed merely because it may appear that the duration of pregnancy was less than the usual period. A verdict in such a case will not be set aside unless clearly and manifestly against the weight of the evidence.

2. BASTARDY—*when instruction as to interest of defendant appropriate.* In a prosecution for bastardy in the name of the People it is not error for the court to direct the jury's attention to the interest of the defendant without making any reference to the interest of the plaintiff.

Bastardy. Appeal from the County Court of Madison county; the Hon. J. E. HILLSKOTTER, Judge, presiding. Heard in this court at the October term, 1909. Affirmed. Opinion filed April 9, 1910.

JOHN J. BRENHOLT, for appellant.

J. F. GILLHAM, for appellee; F. E. SEBASTIN, of counsel.

MR. JUSTICE DUNCAN delivered the opinion of the court.

Birdie May Russell began this prosecution for bastardy in the name of the People against Roswell Bibb, the appellant, in the County Court of Madison county. After a trial by jury the defendant was found guilty of being the father of her illegitimate child as charged in her complaint. Motion for new trial by the defendant was overruled by the court, and judgment entered on the verdict. The defendant has appealed to this court, and for a reversal of this judgment he insists that the charge of bastardy is not sustained by the greater weight of the evidence, and that the court gave an improper instruction to the jury.

There is no contest over the facts that the complaining witness, Birdie May Russell, is an unmarried female, and that on October 19, 1907, she was delivered of a female bastard child. The contest was solely

over the one question as to whether or not the defendant was the father of this illegitimate child. As is to be expected, the complaining witness and the defendant were the only witnesses on the question of their unlawful intercourse. The complaining witness swears that he had intercourse with her four different times, to-wit: On a Saturday night in September, late on the night of October 19th, and on a night in December, all in 1906, and that the last time was some night about the middle of January, 1907. The first two times she says were about two blocks away from her home in North Alton, the first time being on their way home from church, and the second time on their way home from a show. The last two times she says occurred in her mother's back yard just after they came home from the African M. E. Church, and that the last time was just after her brother had left them to take his girl home. The defendant denied that he ever had sexual intercourse with this girl at any time. He also denied that he was ever in her company alone, or that he ever went with her anywhere, and particularly denies that he ever went with her from church or from any show from September, 1906, to January, 1907. He also states positively that he never was at her house, and then again that he never was at her house that he knew of. She is corroborated and he is contradicted in these matters by four witnesses, to wit, first by Ashley Russell, her brother, who swears that the defendant came home with her from church in December, 1906, and in January, 1907, but does not remember the dates; that he never knew anyone going with her except the defendant; that on the Sunday night in January, 1907, that appellant came home with her, he, witness, left him and his sister at his mother's gate, he going on to take his girl home; that the defendant once came to their house and left a suit of clothes on his way to Rocky Ford; and that no other man or boy ever called on his sister at their house from September, 1906, to January, 1907. Her mother swears that the

girl was born March 19, 1892, and that she never allowed her to go with anyone but herself and her son, and never knew that she went with Bibb; and that he was in her house once on his way to Rocky Ford.

William Cannon swears that he saw Bibb with this girl, going home with her from a church entertainment in December or January, does not remember which, and that he was walking with her. Jose Bavenue swears that in the latter part of the Fall of 1906, he saw the defendant and the girl together standing in her yard. To break the force of the People's evidence, the defendant relied on himself and four other witnesses, to wit: First, the justice of the peace, J. P. Thornton, who testified that on the day the girl swore out the complaint, November 23, 1907, she told him that the last time Bibb had intercourse with her was the first Sunday in January, 1907; that he reminded her that that was the 6th day of January, and the fact that the child was born October 19, 1907, seemed "little out of gear to him;" but that she was emphatic and insisted it was on that date. She denied making this statement on the trial.

David Searles says that he and defendant belong to the K. P. Band, and that on the first Sunday in January, 1907, defendant and he were at K. P. Hall at a "smoker," two miles from Bibb's house, from 3 or 4 o'clock in the afternoon of that day to about 9 o'clock P. M. Says he knew it was on the 6th day of January, because he kept down every day he worked. He does not remember, though, where he was on the 13th and 20th of January. He then says the reason he knew it was on the 6th day of January was that the smoker was to have been on New Year's and was postponed to the next Sunday. George Means says he was also a member of this K. P. Band, and remembers the "smoker," and that "as near" as he could remember it was on the 6th of January; that the whole band was there as "near as" he could remember, and that they were there from 3 o'clock P. M. to near 9 P. M.; that he

knows Bibb was there, because he saw him; but that he did not keep track of him any more than the rest of them; that they were all there as "near as" he can remember, and that Bibb was there "as near as" he could remember; but that he can't remember where he talked to Bibb nor why he talked to him.

Allen Bibb, the defendant's father, also testified that the defendant came home twenty minutes after 9 o'clock that Sunday evening and talked to him and his sister and then went to bed; that he also heard the complaining witness say that January 6th was the last time she had intercourse with his son. The defendant also testifies to this alibi, too. If it shall be conceded that the girl did state that the last intercourse was on January 6th, and that she remembered it that way when the warrant was sworn out, there was nothing "out of gear" in that statement, from the fact that the child was born 286 days later, October 19, 1907. The duration of pregnancy is stated by scientific authorities, which have often been in evidence in our courts, to be from 260 to 308 days. Pike v. People, 34 Ill. App. 112. Two hundred and eighty-six days after conception will not be very far from the average time a full matured child is born. Let it be conceded also that she did make the statement that the last time she had intercourse with him was January 6th, and that she afterwards at the trial denied stating that it was on the 6th, it must be remembered that exact dates are hard to remember, and that it is hardly to be expected that a young girl in her embarrassing position would remember all that she said at a former trial. The important and material question is, did he have sexual intercourse with her. It is well proved that he had the opportunity, though he denies it; and that he was the only company she ever had up to that time, she being only a little over fourteen years of age. No court, it seems to us, could say that the verdict was clearly and manifestly against the weight of the evidence. At any rate, we think the jury were fully warranted in finding

the defendant guilty, and that we have no right under the law to interfere with the judgment of the lower court under the evidence in this record.

The second ground assigned for a reversal of the judgment, that the second instruction of appellee is erroneous because it directs the jury's attention "to the interest of the defendant without making any reference to the interest of the plaintiff," is untenable. As said by our Supreme Court in C. & E. I. R. R. Co. v. Burridge, 211 Ill. 13, had the suit been between two natural persons "and had both plaintiff and defendant testified, this objection would be good. In such case an instruction of this character should be so drawn as that it would apply to either party to the suit without pointing out either." In this case the complaining witness is not a party to the suit, and the rule does not apply. While this prosecuting witness is interested in the suit, as all others are, more or less, in any suit, yet she is not a party, plaintiff, as the suit is in the name of the People. In cases of prosecutions in the name of the People, such an instruction is proper. Henry v. People, 198 Ill. 194; Dunn v. People, 109 Ill. 642.

The judgment of the lower court is right, and it will therefore be affirmed.

*Affirmed.*